THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
(SEATTLE)

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, *et al.*; <br><br> Federal Defendants, <br><br> and <br><br> PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al., <br><br> Defendant-Intervenors. | CASE NO. 2:19-cv-00487-MJP <br><br> **FEDERAL DEFENDANTS' UNOPPOSED MOTION FOR STAY OF PROCEEDINGS** <br><br> **NOTE ON MOTION CALENDAR:** **[July 26, 2019]** |

The National Marine Fisheries Service ("NMFS"), Regional Administrator for NMFS West Coast Region, and the Secretary of the Department of Commerce (collectively, "Federal

1

Defendants") respectfully move this Court for a stay of proceedings to allow for the completion of a new Biological Opinion in accordance with Section 7(a)(2) of the Endangered Species Act ("ESA"). Federal Defendants seek a stay of proceedings until May 1, 2020, or issuance of the new Biological Opinion, whichever occurs sooner.

Federal Defendants have conferred with the counsel for the Center for Biological Diversity, *et al*., ("Plaintiffs") and counsel for Pacific Coast Federation of Fishermen's Associations and Coastal Trollers Association ("Defendant-Intervenors"). Plaintiffs do not oppose this motion. Defendant-Intervenors do not oppose this motion.

I.  **INTRODUCTION**

On March 3, 2019, Plaintiffs filed a complaint alleging that NMFS had failed to reinitiate and complete consultation on the Pacific Coast Salmon Fishery Management Plan ("Salmon Fishery Management Plan") and its effects on the Southern Resident killer whale Distinct Population Segment ("Killer Whales") in violation of the Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2). ECF 1. Plaintiffs' request for relief sought, in large part, an order requiring NMFS to reinitiate and complete a new Biological Opinion on the Salmon Fishery Management Plan by a date certain. ECF 1 at 20, ¶ 4-5.[1]

On April 12, 2019, NMFS reinitiated consultation on the Salmon Fishery Management Plan and its effects on Killer Whales. *See* Fed. Defs. Ex. 1. As set forth in the Declaration of Barry Thom, West Coast Regional Administrator for NMFS, NMFS is committed to issuing a new Biological Opinion prior May 1, 2020, and next year's salmon fishing season regulations.

---

[1] The citation format refers to the ECF-generated page numbers located in the upper right corner of the pleadings.

Thom Decl. ¶ 8. Accordingly, Federal Defendants seek a stay of proceedings until issuance of the 2020 Biological Opinion or May 1, 2020, whichever occurs sooner.

## II.   BACKGROUND

### A.   Statutory and Regulatory Background

#### 1.   Section 7 of the ESA

Section 7(a)(2) of the ESA requires federal agencies to, in consultation with the expert wildlife agency (here, NMFS)[2], insure that "any action authorized, funded, or carried out by such agency" is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of the species' designated "critical habitat." 16 U.S.C. § 1536(a)(2), (4). Section 7 and its implementing regulations detail a consultation process for determining the biological impacts of a proposed activity, which in this case will culminate in issuance of a Biological Opinion. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. Pt. 402. If a Biological Opinion concludes that an action is not likely to cause "jeopardy" or "adverse modification," then NMFS provides the Biological Opinion that explains its reasoning to the action agency. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).

Reinitiation of formal consultation is governed by 50 C.F.R. § 402.16. In general, if an action agency retains discretion or control over an action and: (a) if the amount of take specified in incidental take statement is exceeded; (b) if new information reveals effects of the action that may affect the species in a manner not previously considered; or (c) the action is subsequently modified in a manner that causes an effect not previously considered, among other criteria, the action agency shall reinitiate consultation. *Id.*

---

[2] In this instance, NMFS consults with another division within the same agency since it is both the action agency and consultation agency. *See* Thom Decl. ¶ 5.

3

### 2. The Magnuson Act

In 1976, Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson Act), Pub. L. No. 94-265, 90 Stat. 331, 16 U.S.C. § 1801 *et seq.,* to "conserve and manage the fishery resources found off the coasts of the United States." 16 U.S.C. § 1801(b)(1). The Act responded to concerns that certain stocks of fish had declined because of increased fishing pressure, inadequate conservation efforts, and habitat loss. 16 U.S.C. § 1801(a)(2). To combat that depletion of resources, Congress established federal management authority over all fishery resources within an "exclusive economic zone" extending from 3 to 200 nautical miles from the coast of the United States. 16 U.S.C. § 1811(a). States generally retain authority over the first three nautical miles from their borders. 16 U.S.C. §§ 1802(11), 1856(a)(1).

The Magnuson Act also created eight regional Fishery Management Councils to advise the Secretary of Commerce on fishery management. 16 U.S.C. § 1852(a). Council members include federal and state fishery management officials and others knowledgeable about fishery conservation and management nominated by state governors and appointed by the Secretary 16 U.S.C. § 1852(b). Among other duties, each Council "shall" prepare and submit a fishery management plan, or necessary amendments to such plan, "for each fishery under its authority that requires conservation and management." 16 U.S.C. § 1852(h)(1). Those fishery management plans must be consistent with ten national standards for fishery conservation and management. 16 U.S.C. § 1851(a) (listing standards).

A fishery management plan, or an amendment to the plan, becomes effective only when the Secretary, after a notice-and-comment period, promulgates final regulations implementing

the approved plan.  16 U.S.C. § 1854(a)-(b).  The Secretary has delegated that responsibility to NMFS.

**B.      Factual Background**

Each year, the Pacific Fishery Management Council ("Council") develops its annual recommendation for management measures for the west coast salmon fisheries at its March and April meetings.  Thom Decl. ¶ 3.  Under the Magnuson Act, NMFS may approve, disapprove, or partially approve those measures and usually implements the recommendation through rulemaking with an effective date of May 1 (the customary start of the salmon fishing season).  Thom Decl. ¶ 3.  Management measures for the 2019 west coast salmon fisheries were promulgated on May 6, 2019.  84 Fed. Reg. 19729 (May 6, 2019).

Because implementation of fisheries under the Salmon Fishery Management Plan has an effect on Killer Whales, NMFS initiated formal consultation under Section 7(a)(2) of the ESA.  In 2009, that process culminated in issuance of a Biological Opinion concluding that the west coast salmon fisheries were not likely to jeopardize Killer Whales.  *See* Fed. Defs. Ex. 1 at 1.

In late 2018, NMFS began highlighting the emergence of new information pertaining to Killer Whales with the Council.[3]  NMFS subsequently decided to reinitiate formal consultation on April 12, 2019.  *Id.*  This consultation process is underway, and NMFS is actively working with the Council to address this new information.

In April 2019, NMFS developed a report (referred to as Terms of Reference), in which it proposed a detailed timeline for completing formal consultation prior to issuance of the 2020 fishery management measures.[4]  As part of that report, NMFS proposed the formation of an ad-

---

[3] *See* https://www.pcouncil.org/wp-content/uploads/2018/03/E3b_Sup_NMFS_Rpt1_Mar2018BB.pdf

[4] *See* Fed. Defs. Ex. 1 (referencing https://www.pcouncil.org/wp-content/uploads/2019/04/F3a_Supp_NMFS_Rpt1_APR2019BB.pdf).

5

hoc workgroup within the Council process, which is charged with evaluating new information as it pertains to the fisheries and Killer Whales, and potentially recommending conservation measures or management tools to the Council.  Thom Decl. ¶ 6.  On May 23-24, 2019, this workgroup met and discussed the consultation process and the tasks needed to be complete for the Council to provide a recommendation to be evaluated as part of the consultation process for the 2020 Biological Opinion.  The workgroup is currently on track to provide its recommendations to the Council in November of 2019, which will allow NMFS to move forward with the bulk of its analysis for the 2020 Biological Opinion.  Thom Decl. ¶ 8.

In addition, although the ESA Section 7 consultation process is not a public process, these workgroup meetings and the Council process are open to the public.  And NMFS will provide at least two additional briefings or updates to members of the public in January and March as to the status of the new Biological Opinion.  Thom Decl. ¶ 9.

Finally, although the Magnuson Act specifies how NMFS must work with the Council to develop fishery management measures, if the workgroup cannot provide recommendations in accordance with the schedule, NMFS is nevertheless committed to issuing a new Biological Opinion prior to May 1, 2020, which could inform the 2020 fishery management measures.  Thom Decl. ¶ 8.

### III. DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Leyva v. Certified Grocers of California*, 593 F.2d 857,

863-64 (9th Cir. 1979); *Chronicle Publ'g Co. v. NBC*, 294 F.2d 744, 747 (9th Cir. 1961). Three factors guide this Court's determination of whether a stay should be granted: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268. Application of these factors to the facts present before the Court demonstrates that an unopposed stay of the litigation is warranted.

First, the parties will not experience any harm from a stay. *See Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of Navy*, 08-cv-5552-BHS, 2009 WL 2163215, at *10-12 (W.D. Wash. July 17, 2009) (no harm where the district court stayed a case pending additional NEPA review and renewed ESA consultation). The 2019 fishing management measures were issued beginning in May of 2019,[5] and most of the fishing will also be complete by October of 2019. 84 Fed. Reg. at 19734-35. In contrast, the Plaintiffs agreed to Federal Defendants' request to extend deadlines in the current litigation to provide Federal Defendants until August 7, 2019, to file a responsive pleading. ECF 14. Thus, most of this year's fishing will be complete prior to the preliminary proceedings moving forward in this Court.

Moreover, Plaintiffs will not be prejudiced by a stay because they will be kept abreast of the consultation. During the pendency of the stay, NMFS has committed to working within the Council's workgroup. All Council proceedings, including the workgroup, are open to the public and Plaintiffs' members are free to attend and observe these discussions. Similarly, NMFS is committed to providing at least two additional briefings or updates to the public on the status of

---

[5] *See* https://www.pcouncil.org/wp-content/uploads/2019/04/F1e_Supp_NMFS_Rpt1_SRKW_APR2019BB.pdf

7

the consultation in January and March.  Thom Decl. ¶ 9.  Although the consultation process is not public, Plaintiffs will have little trouble following NMFS' progress.  And to the extent Plaintiffs are not satisfied with NMFS' forthcoming analyses in the Biological Opinion, Plaintiffs can raise challenges to that agency decision and attempt to litigate those claims after the consultation is complete.

Second, Federal Defendants will suffer hardship by having to litigate this case before the 2020 Biological Opinion is complete.  Specifically, if litigation moves forward, NMFS will have to devote significant resources as court proceedings move forward.  This will require the agency to shift resources away from preparing the 2020 Biological Opinion because the relevant staff would be involved in both the consultation and litigation preparation.

Third, a stay would serve judicial economy.  Issuance of the Biological Opinion may resolve Plaintiffs' claims entirely or could obviate the need for Court intervention.  But even if Plaintiffs are not satisfied with NMFS' analysis, a new Biological Opinion could at least narrow the issues for the Court.  In *Public Employees for Environmental Responsibility*, the district court found that a stay would serve the interests of judicial economy when the Navy could conceivably make changes to the draft Environmental Impact Statement ("EIS") that would address plaintiffs' concerns, and changes to the project could change the impacts to be analyzed under NEPA and the ESA.  2009 WL 2163215, *11.  To the extent Plaintiffs attempt to challenge NMFS' future decision, those same factors would be present in this case as the Biological Opinion will at least inform Plaintiffs as to how they want to proceed.

In short, a district court may stay proceedings pending resolution of independent administrative proceedings which bear upon the case, and the circumstances surrounding this case warrant such a stay.  *See Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465

8

(9th Cir. 1983); *Malama Makua v. Rumsfeld*, 136 F. Supp. 2d 1155, 1165 (D. Haw. 2001) (staying case when Department of Defense had withdrawn a challenged Supplemental Environmental Assessment and Finding of No Significant Impact to address community concerns). This is especially true when there is no opposition to a stay from the other parties to this case.

## IV.   CONCLUSION

The Court should grant Federal Defendants' unopposed motion and stay this case until May 1, 2020, or the 2020 Biological Opinion issues, whichever occurs sooner. Upon expiration of the stay, the parties will report back to the Court within two weeks as to the status of the litigation.

Dated: July 18, 2019.

Respectfully Submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH FLAX, Assistant Chief

　*s/ Coby Howell*
COBY HOWELL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1000 S.W. Third Avenue, Room 600
Portland, OR 97204
Telephone: (503) 727-1023
Facsimile: (503) 727-1117
coby.howell@usdoj.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that the foregoing will be electronically filed with the Court's electronic filing system, which will generate automatic service upon on all Parties enrolled to receive such notice.

*/s/ Coby Howell*
Coby Howell